*Wilson* for appellant; *McHenry and Harlan & Craddock* for appellees.

---

## Brown *vs* Smith.

Error to the Shelby Circuit.

*Fraudulent sales.*

Ejectment.

*Case 99.*

This opinion, with the case preceding, was delivered on the 31st October, 1846, by the present Chief Justice Marshall, at the close of the term, and suspended until this term.

This was an action of ejectment by the purchaser under execution, against the prior purchaser of the same land from the debtor.

Case stated.

The levy upon
and sale of all
the defendat's
*right, title* and
interest in land,
passes the land
itself.

The objection made to the terms of the levy as being upon the right, title and interest of Johnston in the land, and not upon the land itself, is untenable. The distinction is but nominal and has been too generally disregarded in making levies and sales, for it to be now questioned, whether a levy and sale in either mode is not sufficient, with the Sheriff's deed, to pass to the purchaser such title as the defendant had subject to execution.

The fact that
a purchaser of
property is apprized of the *intention* of the
vendor to hinder,
delay or defraud
his creditors, is
not conclusive
evidence of the
the same *intention* on the part
of the purchaser;
but is a circumstance to be left
to the jury, that
they may determine the *intention* of the purchaser in making the purchase.

But the Court erred in instructing the jury "that if they find from the evidence, that the sale from Johnston to Brown was made for the purpose of hindering, delaying or defrauding the creditors of Johnston, or any of them, in the collection of their debts, the sale was void as to creditors, if Brown knew when he made the purchase, that such were Johnston's intentions; and that a consideration having passed from Brown to Johnston does not make the transaction valid, if he had such knowledge of Johnston's intentions." We do not deem it necessary to enter upon any discussion of this instruction, but refer to the opinion just rendered in the case of *Brown* vs *Force, &c.,* in which similar instructions in reference to the same sale were decided to be erroneous. The question of fraud should have been left to the jury upon all the circumstances, and not upon the isolated fact of Brown's knowledge or ignorance of a fraudulent intent on the part of Johnston, if there was such intent. The knowledge of such intent could at most, afford only a presumption of fraud on the part of Brown, sufficient to establish it, unless repelled by other circumstances. To this extent and no farther, should any instruction have been given as to the effect which the particular fact of knowledge should have in determining the question of Brown's participation in the fraud.

The instructions given on the part of the defendant did not, as is contended, correct the error in the instruction for the plaintiff just noticed. They correctly informed the jury that Brown could not be affected by the fraudulent intention of Johnston, and they must find for Brown, if he himself acted in good faith and without the fraudulent intention of aiding Johnston in hindering, delaying or defrauding his creditors, or unless he made the pur-

chase with the intention of assisting Johnston in his fraudulent purpose. But the first instruction had laid down a peremptory rule for ascertaining whether Brown did make the purchase with fraudulent intent, or at least for determining whether the sale was void or not, by telling the jury that if Johnston intended fraud and Brown knew it, the sale was void. If they believed these two facts, they could not without violating the principles of this instruction, find the fact of Brown's non-participation in the fraud, and thus the main object of the inquiry before the jury was to be concluded by the determination of a preliminary and inconclusive fact.

If upon any or all of the evidence, we could say that it was conclusively established in the whole case, that Johnston fraudulently contrived the sale for the purpose of hindering, delaying and defrauding his creditors by selling his visible property to another, and putting the price in his pocket, and that Brown, without necessity, made the purchase for the purpose of aiding him in the accomplishment of this object, which we admit his making it with full knowledge of Johnston's purpose, and without taking any means to prevent it, would tend most strongly to prove; there would, in such a state of case, be no reason for a strict scrutiny of the instructions, and no probability that the jury could have been misled by them. But as the evidence is not deemed absolutely conclusive as to either of the facts referred to, it is essential to the authority of the verdict, that the instructions should not have been of a character to mislead or even by their confliction, to confound the jury in their investigation of the facts. If it were doubtful upon comparison of the instructions which have been referred to, whether the jury may not have been misled by the first instruction, to give undue weight to the fact (as they might infer it,) that Johnston intended a fraud and that Brown knew it, we think it manifest from the subsequent course and events of the trial, that they did find their verdict under a misconception of the law.

It appears from the record, that after the case had been fully before the jury for a day or two, without their being able to agree upon a verdict, they submitted to the Court

BROWN
vs
SMITH.

the following interrogatory, viz: "If we should believe Brown co-operated with Johnston by making the purchase of the land in order to check the operation of the law in the action of Miss Demaree against Johnston, and yet believe it was not with a view to defraud any one eventually, must we find for the plaintiff." They had been told by the first instruction, that if Johnston intended to hinder, delay or defraud any of his creditors in the collection of their debts, and Brown knew it when he purchased, the sale was void. Their interrogatory implies that they had formed the opinion that the sale was made to hinder and obstruct the course of the legal remedy for the collection of one single debt, and that Brown co-operated in this intent, but not with a view to defraud any one eventually, and they wished to know whether, in this state of case, the sale was void. The Court responded by reiterating in substance, the first instruction, telling them that "if the conveyance from Johnston to Brown was not made with intent to delay the collection of his debts by due course of law, then there was no fraud; but that if, on the other hand, they believed that it was his intention and purpose to delay the collection of his debts by due course of law, and that Brown was aware of such intention, then the deed is fraudulent notwithstanding Johnston may have intended ultimately to pay all his debts." And the jury, shortly afterwards, returned with a verdict for the plaintiff, deciding in effect, that the deed was void.

A debtor may sell property to pay one creditor in preference to another, and a knowledge of such intention by vendee, will not vitiate his purchase.

We cannot avoid the conclusion, that the jury, under the instructions, regarded Brown's knowledge of Johnston's intent as conclusive evidence of his co-operation with it in making the purchase, and we cannot say that they would have found such co-operation to have existed, if they had not supposed that his knowledge of Johnston's intent, was conclusive on the point. But the interrogatory propounded by the jury brings into view another feature of the first instruction, by which their finding was evidently influenced. And that is the proposition, that if Johnston intended by the sale to hinder or delay the legal remedy of one creditor, this was a fraudulent intent, which if known to Brown, would, as the instruction im-

plies, vitiate the whole sale. Johnston had a right to prefer other creditors before Miss Demaree or any others who may have sued him. And the sale of his property before she had any lien upon it, though made with intent to prevent the effect of her suit, was not necessarily fraudulent and void, if made also with intent to pay other creditors, or all the creditors. We do not admit that a sale, intended to supply the means of paying just debts, is fraudulent and void, merely because it may also have been intended as a means of preventing one creditor from sacrificing the debtor's property, and thus preventing the collection or payment of other debts. The intent to delay certain creditors from the collection of their debts by due course of law, will not necessarily vitiate the sale, though known and so far concurred in by the vendee. If it be made also with the intent, and as the means of paying other creditors or all creditors, and if it be upon terms reasonably calculated to answer that purpose in a satisfactory manner, and to the extent of the value of the property, it would seem unreasonable to condemn it, merely because it may have been intended by the grantor to obstruct some of the creditors in the legal coercion of their debts, although this intention may have been known to the grantee. In this case, more than one third of the consideration of the purchase, was by the terms of the sale, secured to certain creditors of Johnston, by the assumption of Brown to pay their demands, in the greater part of which he was security. To this extent, therefore, he stood substantially as a creditor, and as such, had to that extent at least, a lawful motive and inducement to enter into a purchase of Johnston's property. And although this circumstance may not conclusively determine the character of the purchase as being free from fraud, it tends to show that it was made with a different motive, and should exempt it from the peremptory denunciation made against it by the instructions under review. It is not absolutely certain, though probable, that Brown had heard of Miss Demaree's suit when he made the purchase. But if he did know it, and also knew and intended to defeat the effect of the suit, as a remedy for coercing the debt by a sale under execution, there is neverthe-

less evidence, from which the jury might have found, as the terms of their interrogatory indicate, that they believed that the payment of that debt, though not secured by the sale, was in truth one of the objects intended, at least by Brown, who mentioned it as a debt to be paid. It appears too, that about two thirds or more of the consideration of the sale were in fact appropriated by Johnston for the payment of his debts, and that an arrangement for discharging the demand of Miss Demaree, by means of another portion of the consideration, and without probable loss to her, was proposed by him. He says that when he made the sale, he did not know the extent of his indebtedness, but supposed the sale would enable him to pay his debts, which he intended to do, and have something left. It appears too, that Brown actually furnished from his own means, a full consideration, amounting to dbout $6,500 for the property conveyed, and that Johnston had previously made various unsuccessful efforts to sell his land, in which Brown had aided him, and presumably for the purpose of paying his debts by the sale of his property, which Johnston says was his object in making the actual sale.

These circumstances, with others which need not be enumerated, tend to show that the sale was not intended ultimately to defeat any of Johnston's creditors, but that it may have been intended as a means of raising money to pay them. This inference was not conclusively repelled by Johnston's subsequent appropriation of a portion of the price to other uses, leaving a portion of his debts unpaid. But the jury seem to have believed that the sale was intended by both parties, to obstruct the legal remedy for the collection of Miss Demaree's debt, and as the instructions of the Court imply that believing this fact, they were bound to find the sale fraudulent and void, though they might believe that it was made for the purpose of paying the debts of Johnston to the full extent of the consideration, the verdict can only be regarded as establishing the fact, that the sale was intended to obstruct the collection of Miss Demaree's debt, without negativing the fact that it was also intended as a means of paying debts to the extent of its value, even including

that of Miss Demaree. If it was so intended, it was not in our opinion, conclusively fraudulent and void, even as against Miss Demaree.

The answer to the interrogatory put by the jury, should have been, that upon the facts stated therein, they were not bound to find for the plaintiff, unless they believed that both parties to the sale intended at the time that the consideration should be withheld from Johnston's creditors; or that they were not bound to find for the plaintiff if they believed that the intent of Brown in making the purchase, was that the price should be appropriated to the payment of all of Johnston's debts, or as far as it would go.

As our object has been merely to consider the principles involved in the instructions, we have referred to the evidence only so far as to show that the jury may have been misled by the instructions, and we only decide that upon the facts assumed in them the jury was not bound to find for the plaintiff. The witnesses objected to by Brown had no direct interest in the event of this suit, and the record could not be used as evidence for or against them in the suit brought by Brown against them, *for taking* under attachment a part of the personal property conveyed by the same deed now in question. They were, therefore, not incompetent, but their interest in the question would properly go to their credit. In overruling the objection as taken to the competency of the witnesses, the Court might, and if required, should have told the jury that the interest of the witnesses in the question, was a circumstance which, in the estimation of the law, might affect their credit, but that it was for the jury to determine for themselves how far, if at all, this bias may have affected the testimony of the witnesses, and how far their statements were to be believed as true. As the Court was not requested to instruct the jury on this subject, the omission to do so cannot be complained of.

The question how far the acts of Johnston, after the conveyance to Brown, should bear upon the question of fraud, was not made nor decided in the Circuit Court.

For the errors in the instructions as above indicated, the judgment is reversed, and the cause remanded for a new trial, on principles consistent with this opinion.